Okay, the next case is in the interest of S.E., D.C., D.C., C.C., & E.C., Minors. This is a Supreme Court Rule 311 appeal, an expedited appeal, and the decision is due by July 8, 2012. And Mr. Macklin, are you ready to proceed, sir? Yes, sir. Please do so. Okay. May it please the Court, I'm here representing the mother of the five children that are involved in this matter. Her name is Misty. She is asking this Court to reverse the trial court. When it denied my motion to file on her behalf so that she could attend the final hearing scheduled in this matter, the best interest hearing, before the final decision was made on whether or not to terminate her parental rights. The place I think we should begin is NRADT, which is the 2004 Illinois Supreme Court case, which decided that in the termination of parental rights, it's not up to the discretion of the trial judge, but requires a preponderance of evidence. And citing the statute, there are 15 factors which the Court is not considered in weighing the preponderance arguments. Her argument is that a mother's insight into what is in her children's best interest is always relevant to the Court in its decision. And of course, the Court in the DT case emphasized that. And in fact, it has been the law, and is still the law, that the Court must hold a best interest hearing. Now this matter has gone on for four years. There have been 25 separate court hearings on this. As my brief stated, my client had been in attendance in all but one when she could not be present. That was Judge Campanella's comment. In fact, she had missed four, but the three other hearings where she was not in attendance, she was not able to attend because of hospitalization. But she had shown continuing interest in the outcome of the case and in the whereabouts and the best interest of her children. When I received word just the day before the best interest hearing that she was not able to attend due to the fact that she was having complications with pregnancy, I prepared the motion which I did file on the date of the best interest hearing. Under Rule 231, unfortunately, I did not have the time to prepare and get signed an affidavit regarding the allegations of my petition for continuance, and also due to the limitations of time and distance involved. I was not able to secure a doctor's statement exactly as to her condition, but I think it's certainly credible that my client would have been there had she been physically able to attend. This is borne out by the fact that she did make all of the previous hearings. Petitioner in their reply brief stated that she could not have been prejudiced by the fact that she was not in attendance at the hearings. Well, there's no way to know that. She certainly could have testified. The testimony would have been another factor for the court's consideration in determining the best interest. That information was not available to the court because the court did not continue the hearings in order for her to attend. The appellate courts have held that there must be a grave reason for a continuance. Here again, I feel that hospitalization is certainly such a reason. The trial court must weigh the potential inconvenience of continuance as opposed to denial of continuance. In this case, there was one witness that the state produced at a trial. There was one exhibit. So the inconvenience of which the court would have suffered would have been minimal. So in this case, we feel the trial court abused its discretion by simply stating that pregnancy is a voluntary act and that therefore no good excuse is presented which would justify continuance. And we feel that there's a palpable injustice to the court and certainly to the mother to deny her the right to attend the final hearing before her parental rights are possibly terminated. For the reasons above stated, we would ask the court to reverse the trial judge's finding and allow a final hearing. Thank you. Thank you. Ms. Shanahan? May I please report, counsel? My name is Sharon Shanahan and I represent the people of the state of Illinois. This case deals with a request of continuance filed the morning of the best interest hearing. I think it's important to briefly point out what this case does not deal with. It does not challenge the finding of unfitness. It doesn't really even challenge the finding of best interest. The challenge is only to the denial of the continuance for alleged medical reasons which was made on the day of the hearing. Now, this motion was made with no documentation whatsoever. Supreme Court Rule 231F requires that when a continuance is not requested until the day of a trial, it requires an especially grave reason to be given by the moving party because of the potential inconvenience to the witnesses, the parties, and the courts. And I think there's another party to this case that we need to consider. Counsel, the mother says it would only inconvenience this one witness. That's not true. What about these children that have been in limbo for years who have foster parents ready and willing to adopt them? She still hasn't had this baby, I don't think. So if she has had trouble hearing this, do we delay it until the baby's delivered? So it doesn't just deal with the inconvenience to the one witness that was testified. I probably should keep my mouth shut, but I'm going to say something here. These cases go on for four years involving children are incredibly frustrating. I agree. And I just think somehow we have to get this brought out to the trial courts. This is important to families and to children, and we start this out with it's a truancy case, it starts out, right? I don't think so. And four years later we're terminating parental rights. I couldn't agree more. And I don't know, I think maybe we need to get the word out to DCFS more than anybody else. It's not the courts. I mean, I think the state moves promptly on these things once they're told to. Well, I've distracted you from the issue, so I'm sorry. And I only have ten minutes. So getting back to this, again, referring to the rules about continuances. If a continuance is based upon the illness of the party, it must be supported by competent medical testimony stating the nature of the illness and the reasons why that party is unable to attend or participate. There was no documentation in this case whatsoever. All we have is, according to the transcripts, and I'm quoting from page 1067, counsel for the respondent says, according to what she told me, she was confined to bed rest as the result of her pregnancy with her eighth child. There's no medical documentation, despite the fact that she had been to the doctor several days earlier. She may not have told her attorney until right away, but she had been to the doctor several days earlier, and she could have gotten documentation for this. There's no doubt that this was in the best interest of these children. As Justice Weston has noted, these children have, their future's been in limbo for four years, and the children have thrived in foster homes, and the foster parents were eager to adopt. The caseworker, who was the only witness at the hearing, felt that the children deserved an opportunity for permanence and stability, and which the parents, I mean, nothing ever changed in this case. And the guardian ad litem vehemently, that's his word, concurred. As to the prejudice, the DCFS report was given to the parties a week before the hearing. It was the only document presented. The author of the report was there and did testify. So counsel for the mother knew what was in that report, and had he chosen to, he could have cross-examined Ms. Randall about the contents of that, and yet he, and again I'm quoting, knew of no basis to question the contents of the report. Moreover, he says, well, you know, the mother might have testified. I would note that the father wasn't there either, and counsel for the father, when asked if he had anything to testify, he said that if his client had been there, he would have had him testify. Counsel for the mother never said that. He didn't say, oh, if my client had been here, I would have called her to testify. So apparently his opinion was there was nothing else to present to the court or to oppose this claim. I think I would be remiss in not saying something about the trial court's language in denying this motion. Inartful, perhaps? I think that's the word I used. That's exactly the word I used. As a mother, to hear a trial court say that pregnancy is a voluntary action, part of the problem with this case is procreation. I honestly pictured that judge wanting to reach out and grab those words and put them back in his mouth. However, I think you need to understand his exasperation with this case. The father in this case has pretty close to 15 children with three sisters. Two of them were involved in this incident proceeding. He's not married to any of them. Misty's five children, which are involved in this case, and then her sister's four children. Misty has given birth to 10 children. As I say, five of them were the ones involved in this proceeding. During the pendency of these proceedings, she gave birth to two more children, which she gave up for adoption, and now she's pregnant again. So when the trial court says procreation is a problem in this case, those are the facts he was thinking about? Yeah. I think he could have said it better, but I think it's an understandable statement, and I also think that even though it was impolitic, it does not affect the propriety of the conclusion that he reached, which is that a continuance the morning of the hearing after this long a time was not necessary. Is there another question? Thank you. Any rebuttal? Very briefly. As the court noted, this started out a truancy case. It was later changed to allegations, and the goal switched from reunification of the family to termination of parental rights. There was never any allegation of abuse by the mother or the father to the children, but whether the lack of counsel aptly points out that certainly the lifestyle and life choices of the parties and participants was unusual, to say the least. But had it not been for lack of funds, I doubt this situation would have ever gone to DCFS. But in any event, we're here. Counsel mentions the father, the father's role with the children. I did not represent the father. The father's rights are not in question here today. I'm here on behalf of the mother who has consistently throughout the four years maintained an interest in her children, gone to court hearing after court hearing when she had lack of funds, lack of transportation, yet she was there. At the end of the line, the last hearing, she was unable to get there, I think the court should have. The point is, in fact, we don't know she was unable to get there. There is no affidavit from her, from the doctor, from anybody. This is what you repeated in your motion that she told you, and that's why an affidavit or some support in a motion to continue is required. So by repeating what she has told you doesn't make it so. I agree. And I wish I had had the time and opportunity to obtain affidavits. I did not. But I think the fact that she did show up at all the other hearings except one, other than when she was hospitalized, indicates her caring, her wanting to be involved, participate in these proceedings, and after four years, could have granted a shorter continuum so she could have been arrested. Thank you. Okay, thanks. Thanks to both of you for your arguments and your briefs this morning, and we will provide you with a decision prior to or on July 8, 2012. Thank you.